STEVEN KALAR
Federal Public Defender
DANIEL P. BLANK
Senior Litigator
450 Golden Gate Avenue
San Francisco, California  94102
Telephone:  (415) 436-7700
Facsimile:   (415) 436-7706
Email:        Daniel_Blank@fd.org

Counsel for Defendant PIPPERT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br><br>DOUGLAS PIPPERT,<br><br>            Defendant. | **Case No.:** CR 17-0563 VC<br><br>**REPLY ON GOVERNMENT'S SENTENCING MEMORANDUM**<br><br>**Court:**   Hon. Vince Chhabria<br>**Date:**    October 2, 2018<br>**Time:**    10:30 a.m. |

**ARGUMENT**

The government's primary reasoning in support of its argument that the Court should impose a sentence of 235 months upon Defendant Douglas Pippert is that the Static 99-R test – the leading psychometric test designed to measure risk of sexual recidivism, which was administered to Mr. Pippert by California state authorities in connection with this case in 2016 and resulted in a 3, placing him in the low-moderate risk category, PSR ¶ 57 – "is problematic for predicting recidivism." Gov't Sent. Memo. (Docket #22) (filed Sept. 25, 2018) at 3 (citing *United States v. McIlrath,* 512 F.3d 421 (7th Cir. 2008)).  While of course no tool is perfect, both the *McIlrath* decision and myriad other decisions have recognized that the Static 99 test is the best available instrument for predicting the risk of recidivism in cases such as this and routinely rely upon it, particularly when as here it is combined with the clinical judgment of an expert.

Along these lines, the *McIlrath* court recognized that "[t]he methodology employed by Static 99 to predict the probability of recidivism has been accepted in a number of cases." 512 F.3d at 425 (string cite omitted).  While acknowledging that there are "problems with efforts to predict recidivism from offenders' characteristics," *McIlrath* expressly concluded the Static 99 is the proper starting place for the analysis, although it should also take other factors into account.  *See id.* ("Static 99 may be a good place to start an analysis of the likelihood of a specific defendant's repeating his crime – but not to end it.").  Rather, it is the combination of the Static 99 test, plus the opinion of an expert, that it provides the most reliable prediction.  *See id.* at 425-26.  That is exactly what occurred in this case, where Dr. Scott Lines opined that Mr. Pippert's actual risk of recidivism is in fact even lower than the low-moderate prediction of the Static 99 due to his expected age at the time of release as well as his emerging understanding of the connection between his criminal conduct and the abuse he suffered as a child.  *See* Def. Sent. Memo. at 4-5.

As for the Static 99 test itself, the California courts have long recognized it as the "gold standard" and "best" among available tools for predicting recidivism in sex offense cases. *People v. Seja,* 2011 WL 2937915 (Cal. Ct. App. July 22, 2011) (unpublished decision) at *5;

*see also People v. Wilson,* 2009 WL 4548733 (Cal. Ct. App. Dec. 7, 2009) (unpublished decision) at *5 ("Dr. Vogenson evaluated Wilson using the same actuarial instruments used by the People's experts. He agreed with Dr. Goldberg on Wilson's scores and on the Static 99 and SORAG, and 'roughly agreed' with the MNSOST-R score. He described the Static 99 as 'the gold standard tool in cases like this.'"); *People v. Mase,* 2008 WL 4055407 (Cal. Ct. App. Sept. 2, 2008) (unpublished decision) at *5 ("Psychologist Dr. Jeremy Coles also testified as an expert on behalf of the People. He used two actuarial instruments on Mase, including the Static 99. He stated that no actuarial instrument was perfect, but they were the best tool for predicting re-offense. Dr. Coles also indicated that he considered other factors in making his assessment."); *People v. Calhoun,* 2006 WL 1351492 (Cal. Ct. App. May 18, 2006) (unpublished decision at *9 ("Defense expert Longwell testified about the Static 99 test: '[I]t's the best that we have, and scientifically, it is quite good.' The People's experts agreed with Longwell. Dr. Vognsen testified that the Static 99 test 'is the most commonly used in my profession across the states and across the European world and Canada' and that '[i]t's the best we have.' Dr. Starr testified that she 'utilized the Static 99' and that '[p]resently that actuarial instrument has the best accuracy of any of the actuarial measures that are available.'").[1]

Federal courts as well, including numerous decisions from this district, have cited with approval the use of the Static 99 test. *See, e.g., Woodard v. Mayberg,* 242 F. Supp.2d 695, 698 (N.D. Cal. 2003) ("In evaluating appellant, Dr. French employed a rating scheme related to recidivism called the 'Static 99.'"); *see also Nothnagel v. Allenby,* 2016 WL 393164 (N.D. Cal. Feb. 2, 2016) (unpublished decision) at *1 ("Coles and Updegrove evaluated his risk of reoffending using actuarial risk formulas, one of which was the Static 99."); *Doe v. Harris,* 2013 WL 144048 (N.D. Cal. Jan. 11, 2013) (unpublished decision) at *9 ("The government already classifies registrants using a risk-assessment tool known as the Static 99."); *Kirk v. Hunter,* 2008 WL 5000488 (N.D. Cal. Nov. 21, 2008) (unpublished decision) at *2 ("Dr. Starr

---

[1] Unpublished California appellate decisions may be cited here and before the Ninth Circuit as persuasive authority, though not as precedent. *See Beeman Pharm. Serv., Inc. v. Anthem Prescription Mgmt.,* 652 F.3d 1085, 1093 (9th Cir. 2011).

determined that Petitioner was likely to reoffend based on his score on the Static 99 scale and his lack of remorse.").

Thus, the Court should reject the government's argument that the Static 99 results in this case should be disregarded, particularly where they are as here combined with Dr. Lines' clinical assessment of Mr. Pippert, which is consistent with those results in predicting a low risk of recidivism.

## CONCLUSION

For the aforementioned reasons, and those set forth in the Mr. Pippert's Sentencing Memorandum (Docket #23) (filed Sept. 25, 2018), the Court should sentence Mr. Pippert to a term of 180 months imprisonment, 10 years supervised release with proposed conditions as amended, and a special assessment of $100.

Respectfully submitted,

Dated:   October 1, 2017

STEVEN KALAR
Federal Public Defender
Northern District of California

          /S
DANIEL P. BLANK
Assistant Federal Public Defender

3